UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH SHERMAN,

    *Plaintiff*

vs.

THALIA GRAVES *and*
GLORIA ALLRED

    *Defendants*

Civil Action No.: 1:24-cv-08494-AT

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION AND LEAVE TO FILE SECOND AMENDED COMPLAINT

### I. INTRODUCTION

Plaintiff Joseph Sherman respectfully moves this Court to reconsider its Order dated June 2, 2025 (ECF No. 43), which dismissed his amended complaint with prejudice and imposed sanctions on his counsel, and to grant leave to file a Second Amended Complaint. Newly discovered evidence—the sworn declaration of Conrad Dimanche, a former Bad Boy Records employee and long time acquaintance of Defendant Thalia Graves—reveals that Ms. Graves admitted to fabricating rape allegations against Mr. Sherman and attempted to bribe Mr. Dimanche with $3,000,000 to provide false testimony, as corroborated by text messages. This new evidence, unavailable at the time of the Court's decision, demonstrates that Mr. Sherman's claims were not frivolous, warrants vacating the sanctions, and supports amending the complaint to address Ms. Graves' egregious actions.

Denying Mr. Sherman the opportunity to defend (and make himself whole) against Ms. Graves' and her lawyers' false accusations and abuse of legal process would perpetuate a grave

1

injustice, particularly for a black man whose voice risks being silenced in a system where such voices are often marginalized. Indeed, black individuals are seven times more likely to be wrongfully convicted of serious crimes, including sexual assault, often due to biases like cross-racial misidentification.[1] By reconsidering its order and allowing amendment, the Court can affirm the legal system's commitment to protecting those wrongfully accused, setting a precedent to deter such abuses and give voice to black men facing similar injustices.

## II.  BACKGROUND

On September 24, 2024, Mr. Sherman filed an amended complaint (ECF No. 12) alleging defamation, intentional infliction of emotional distress (IIED), abuse of process, and other claims against Ms. Graves and her attorney, Gloria Allred, stemming from Ms. Graves' lawsuit *Graves v. Combs et. al.*, Case No. 24-CV-7201 accusing Mr. Sherman and Sean Combs of raping her in 2001 at Bad Boy Records. Defendants moved to dismiss and for sanctions under Federal Rule of Civil Procedure 11, citing a safe harbor letter served on November 13, 2024. On June 2, 2025, the Court dismissed the complaint with prejudice, finding several claims "patently frivolous" due to legal barriers, such as the absolute litigation privilege for defamation, and imposed sanctions on counsel for failing to withdraw them (ECF No. 43). Defendants seek approximately $75,000 in legal fees.

Subsequently, Mr. Sherman obtained a sworn declaration from Conrad Dimanche, dated June 16, 2025, revealing Ms. Graves' admissions of fabrication, defamation, and bribery attempts, which were not available at the time of the Court's decision.

---

[1] *See*, Gelbart, C. (2023). Study Shows Race is Substantial Factor in Wrongful Convictions. Retrieved from https://eji.org/news/study-shows-race-is-substantial-factor-in-wrongful-convictions/. *See also*, Race and Wrongful Conviction. (2024). Retrieved from https://innocenceproject.org/race-and-wrongful-conviction/

2

### III.     LEGAL STANDARD

*Motion for Reconsideration*

Under Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, reconsideration is warranted when there is new evidence, an intervening change in law, or a need to correct clear error or prevent manifest injustice. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). New evidence must be material and unavailable at the time of the original decision. *United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir. 1983).  Here, there can be no doubt that the attached Sworn Statement is new evidence.

The provided Sworn Statement is unequivocally new evidence. This evidence reinforces the undersigned's assertion that due diligence was exercised prior to filing this action and that the lawsuit was not frivolous. Furthermore, given this sworn testimony, the wholesale dismissal of the Plaintiff's complaint would patently constitute a manifest injustice.

*Leave to Amend*

Federal Rule of Civil Procedure 15(a)(2) directs courts to freely grant leave to amend when justice requires, absent undue delay, bad faith, or futility and that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Second Circuit emphasizes that leave should be granted unless amendment is clearly futile, particularly when new evidence supports viable claims. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

Here, there can be no doubt that justice requires permitting to allow Mr. Sherman to amend his complaint in conjunction with the attached sworn statement.  As the Second Circuit and Supreme Court both explained, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim

on the merits." *See, Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160, 190 (2d Cir. 2015).

## IV.  ARGUMENT

### A.  New Evidence Warrants Reconsideration

The sworn declaration of Conrad Dimanche (Exhibit A) constitutes new evidence unavailable at the time of the Court's Order. Mr. Dimanche, employed at Bad Boy Records from 1998 to 2007, states:

- Ms. Graves was only at Daddy's House Recording Studio in 2000, not 2001, and no assault occurred. (Exhibit A, §§7-8)

- Mr. Sherman was not employed at Bad Boy Records after 1999 and was not present in 2001. (Exhibit A, §§5, 8)

- In late 2023, Ms. Graves admitted her rape allegations against Mr. Sherman were fabricated, stating she was neither drugged nor raped, and her lawyers targeted Mr. Combs for his wealth. (Exhibit A, §9)

- In late 2023, I had conversations with Thalia Graves (prior to her filing her lawsuit) where we spoke about her making false rape allegations against Joe Sherman and Sean Combs. During our conversations she unequivocally admitted to me that her allegations against Joseph Sherman and Sean Combs were fabricated but she was thinking of pursuing them anyway. More specifically she admitted to me she was not drugged and she was not raped. She also admitted to me that her lawyers told her that they liked the idea of going after Sean Combs especially because according to her lawyers "he's the one with the money," but they'd file suit against the both of them no matter what. (Exhibit A, §9)

- In separate and later conversation with Ms. Graves, she said to me that she was going to drop the allegations against Joe Sherman because both her and her lawyers had both come to the conclusion that she was not raped, nor was she drugged and that she didn't want all this to end up in the media because it would make her look bad. (Exhibit A, §10)

- After this conversation, I thought that Ms. Graves was dropping the claim, but she contacted me again and said she would offer me $3,000,000 for me to lie about what happened so she can pursue a false claim against Sean Combs and Joesph Sherman. (Exhibit A, §11)

4

- Let me be perfectly clear, I have text messages between Ms. Graves and myself where she offers me $3,000,000 for me to lie about what happened so she can pursue a false claim against Mr. Combs and Mr. Sherman. (Exhibit A, §12)

This evidence, obtained post-Order, directly undermines Ms. Graves' allegations and reveals her bad faith, necessitating reconsideration of the dismissal and sanctions to prevent a manifest injustice.  Denying Mr. Sherman the opportunity to pursue his claims would silence a black man seeking to challenge false accusations, perpetuating systemic inequities where such individuals face disproportionate harm.

B.   **The New Evidence Supports Viable Claims**

The declaration supports non-frivolous claims, particularly IIED and abuse of process, and potentially defamation if non-privileged statements are uncovered through discovery.

1.   **Intentional Infliction of Emotional Distress**

Ms. Graves' attempt to bribe Mr. Dimanche to provide false testimony, coupled with her knowingly false allegations, constitutes extreme and outrageous conduct intended to cause severe emotional distress. Such actions, aimed at coercing Mr. Sherman through baseless accusations, meet the high threshold for IIED under New York law, which requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). Courts have recognized that maliciously false accusations can support IIED claims when combined with egregious conduct. *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983). False accusations of rape, particularly against black men, carry a heavy historical burden, exacerbating emotional distress due to societal prejudices, as evidenced by high percentage of wrongful convictions.[2]

---

[2] *See*, Gelbart, C. (2023). Study Shows Race is Substantial Factor in Wrongful Convictions. Retrieved from https://eji.org/news/study-shows-race-is-substantial-factor-in-wrongful-convictions/.

2.  **Abuse of Process**

Ms. Graves' filing of a false lawsuit and attempt to procure false testimony constitute abuse of the legal process for an improper purpose—extorting money from Mr. Sherman. New York law recognizes abuse of process when process is used to achieve a collateral objective, such as coercion. *Board of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc.*, 38 N.Y.2d 397, 403 (1975). Subsequent actions like suborning perjury can constitute abuse of process. *Parkin v. Cornell Univ., Inc.*, 78 N.Y.2d 523, 530 (1991). Clearly Ms. Graves' actions – as testified by Mr. Dimanche – constitute a classic example of abuse of process.

3.  **Defamation**

The Court dismissed the defamation claim due to the absolute litigation privilege and lack of specific non-privileged statements (ECF No. 43 at 5-6). While the Declaration does not specify media statements, Ms. Graves' concern about negative media attention (Exhibit A, §10) suggests she has made public statements. Furthermore, the Declaration clearly suggests that she made false statements to Mr. Dimanche, even if later she admits they were lies. Discovery is expected to uncover more such statements, which, if false and made with malice, would support a defamation claim under New York law, requiring a false statement, publication, fault, and harm. *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1st Dep't 1999). Indeed, rape accusations are defamation *per se*, presuming harm.

C.  **Sanctions Are Inappropriate Especially Given the New Evidence**

The Court imposed sanctions under Rule 11(b)(2) for pursuing claims deemed legally frivolous after the safe harbor letter served on November 13, 2024. However, the undersigned

submits that sanctions are inappropriate for multiple compelling reasons, rooted in the factual basis of the claims, the diligent investigation conducted, and the broader implications for justice. First, the claims are demonstrably not frivolous, as evidenced by the newly obtained Sworn Declaration of Conrad Dimanche, received on June 16, 2025.  Mr. Dimanche's testimony reveals that Ms. Graves admitted her rape allegations against Mr. Sherman were fabricated, stating she was neither drugged nor raped, and offered Mr. Dimanche $3,000,000 to provide false testimony, as corroborated by text messages (Exhibit A, §§9-12).  A litigant who lies, seeks to bribe, and falsely accuses another of rape is, without a doubt, abusing the legal process, among other actionable wrongs. This evidence, unavailable at the time of filing, underscores that the claims had a substantial factual foundation, negating any suggestion of frivolousness. Courts have recognized that sanctions are inappropriate when claims are supported by credible evidence, even if ultimately unsuccessful. *Storey v. Cello Holdings, L.L.C*., 347 F.3d 370, 391 (2d Cir. 2003).

      Second, the undersigned conducted a diligent pre-filing investigation, fulfilling Rule 11's requirement for a reasonable inquiry into the facts and law. This investigation included interviewing individuals whose firsthand knowledge of Ms. Graves' admissions provided a solid basis for the claims, and reviewing Instagram messages (Exhibit A to Amended Complaint, ECF No. 12-1) where Ms. Graves attempted to coerce Mr. Sherman into testifying against Sean Combs.  These messages, coupled with Mr. Dimanche's testimony, supported a good-faith belief that Ms. Graves' allegations were false and motivated by improper purposes. The Second Circuit has emphasized that Rule 11 does not penalize attorneys who rely on credible client information or witness testimony after a reasonable inquiry. *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980) (noting sanctions are inappropriate when counsel's inquiry was reasonable under

the circumstances). The undersigned's efforts, including direct engagement with key witnesses, met this standard — even if seeking to extend or advance the law.

Third, the law is clear that sanctions are inappropriate when counsel seeks to extend, modify, reverse, or establish new law, particularly in cases addressing significant injustices. The undersigned, a black lawyer, sought to be a voice for Mr. Sherman, a black man wrongfully accused of a heinous crime, in a legal system where such individuals face disproportionate harm. Indeed, it has been widely studied and reported that black individuals are seven times more likely to be wrongfully convicted of serious crimes, including sexual assault, often due to biases like cross-racial misidentification.[3] Some claims, such as those for IIED and abuse of process, aimed to extend legal protections for those falsely accused, a nonfrivolous objective under Rule 11(b)(2). In *Green v. First Liberty Ins. Corp.*, 321 F. Supp. 3d 368, 375 (E.D.N.Y. 2018), the court recognized there can be good-faith efforts to advance novel theories without always imposing penalties. Here, the undersigned could not imagine a more compelling case to advance this area of law, given Ms. Graves' admitted fabrication and coercive tactics.

Fourth, the undersigned had a good-faith basis for bringing the claims, negating any objective unreasonableness. Courts assess good faith by examining what was reasonable to believe at the time of filing, avoiding hindsight bias. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (emphasizing good faith as a factor in sanction decisions). The Instagram messages and pre-filing discussions with Mr. Sherman and others provided a plausible factual foundation, and legal research in seeking to extend the law in this area led to further belief in its

---

[3] *See*, Gelbart, C. (2023). Study Shows Race is Substantial Factor in Wrongful Convictions. Retrieved from https://eji.org/news/study-shows-race-is-substantial-factor-in-wrongful-convictions/. *See also*, Race and Wrongful Conviction. (2024). Retrieved from https://innocenceproject.org/race-and-wrongful-conviction/

8

viability, even if some causes of action required extending existing law. The Second Circuit has cautioned that Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing legal theories. *See, Nemeroff v. Abelson*, 620 F.2d at 348. Imposing sanctions here would unfairly penalize counsel for seeking to give voice to a wrongfully accused black man and continue to stifle efforts to address systemic injustices.

Finally, imposing sanctions would have a chilling effect on advocacy for marginalized individuals. The legal system must encourage attorneys to represent clients like Mr. Sherman, who face severe reputational and emotional harm from false accusations. Historical cases, such as the wrongful convictions of the Central Park Five, highlight the need for robust legal recourse. Sanctions here would deter such advocacy, contrary to Rule 11's purpose of deterring only egregious misconduct, not legitimate efforts to seek justice. *Cooter Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (noting Rule 11 aims to deter, not punish, and should be applied sparingly).

In conclusion, sanctions are inappropriate because the claims were not frivolous, supported by a diligent investigation, and pursued in good faith to address a significant injustice. The Court should vacate the sanctions order and allow amendment to incorporate Mr. Dimanche's evidence.

### D. Leave to Amend Should Be Granted

Justice requires granting leave to file a Second Amended Complaint to incorporate the declaration's evidence, curing prior deficiencies. Indeed, the amendment is not futile, as it supports — at its very least — a viable IIED and abuse of process claims, and potentially defamation and negligence pending discovery. There is no undue delay or bad faith; the evidence was recently obtained. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Loreley Fin.*, 797

F.3d at 190. The undersigned respectfully requests that this Court permit him to prepare a proposed Second Amended Complaint with the Court's grant of leave.

Indeed, this case implicates broader societal concerns. False accusations, particularly of serious crimes like rape, disproportionately harm black men, as evidenced by the National Registry of Exonerations and many other publications,[4] which reports that black individuals are seven times more likely to be wrongfully convicted of serious crimes, including sexual assault, often due to biases like cross-racial misidentification. Historical cases, such as the wrongful convictions of the Central Park Five, underscore the need for legal recourse to challenge such abuses. By allowing amendment, the Court can set a precedent ensuring that the legal system protects those wrongfully accused, particularly from marginalized communities, and deter misuse of judicial processes.

## V.   CONCLUSION

In conclusion, denying Mr. Sherman the opportunity to pursue his claims would not only perpetuate an injustice but also silence a black man seeking to challenge false accusations in a system where such voices are often marginalized. By granting this motion, the Court can rectify this wrong, affirm its commitment to fairness, and establish a precedent that empowers individuals to seek redress against abuse of process and false allegations. For the foregoing reasons, Mr. Sherman respectfully requests that the Court reconsider and vacate its June 2, 2025, Order, including the sanctions, and grant leave to file a Second Amended Complaint where he

---

[4] *See*, Gelbart, C. (2023). Study Shows Race is Substantial Factor in Wrongful Convictions. Retrieved from https://eji.org/news/study-shows-race-is-substantial-factor-in-wrongful-convictions/. *See also*, Race and Wrongful Conviction. (2024). Retrieved from https://innocenceproject.org/race-and-wrongful-conviction/

10

will incorporate and expand upon the evidence in the Dimanche Sworn Statement and additional evidence he has collected.

                Respectfully,

                THE PLAINTIFF:
                JOSEPH SHERMAN

                By his lawyer:

                _____
                Darnell D. Crosland, Esq.
                **CROSLANDLAWGROUP LLC**
                1200 Summer Street, Ste 202
                Stamford, Connecticut 06905
                Tel. (203) 921-1782
                Fax (203) 921-1223
                info@croslandlaw.com

                Dated: June 16, 2025

**CERTIFICATION**

I HEREBY CERTIFY that on June 16, 2025, a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION AND LEAVE TO FILE SECOND AMENDED COMPLAINT was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filling will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Respectfully submitted by:

_____
Darnell D. Crosland, Esq.
**CROSLANDLAWGROUP LLC**
1200 Summer Street, Ste 202
Stamford, Connecticut 06905
Tel. (203) 921-1782
Fax (203) 921-1223
info@croslandlaw.com