UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

| | |
|---|---|
| JOSEPH SHERMAN,<br>Plaintiff,<br><br>-against-<br><br>THALIA GRAVES, et al.,<br><br>Defendants. | 24-CV-08494 (AT) (VF)<br><br>**OPINION & ORDER** |

---------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge.**

Pending before the Court is a motion for attorney's fees filed by Defendants Thalia Graves and Gloria Allred. ECF No. 53. Defendants seek an award of attorney's fees in the amount of $92,580. Id. at 1.[1] Plaintiff's counsel, Darnell D. Crosland, Esq., opposes the motion. ECF No. 59. For the reasons stated herein, Defendants' application for attorney's fees is granted in the amount of $62,959.50.

## BACKGROUND

The Court presumes the party's familiarity with the factual and procedural background of this case which is recounted in the June 2, 2025 opinion and order of the Honorable Analisa Torres. ECF No. 43. In that June 2 decision, Judge Torres granted in part Defendants' motion for sanctions under Federal Rule of Civil Procedure 11. See id. at 10-12. Specifically, Judge Torres concluded that Plaintiff's counsel, Crosland, had violated Rule 11 because the complaint asserted at least five "patently frivolous claims" that were "unambiguously foreclose[d] by existing case law." Id. at 11 (alteration in original) (quotation marks omitted). Judge Torres concluded that

[1] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the electronically generated pagination in those documents.

sanctions were appropriate and ordered Defendants to "submit proof of the costs and attorneys' fees they have incurred in opposing this action." Id. at 12.

On January 21, 2026, Defendants submitted their motion seeking $92,580 in attorney's fees incurred in opposing this action. ECF No. 53. Plaintiff's counsel filed an opposition on February 19, 2026. ECF No. 59. Defendants submitted a reply in further support of their application for fees on March 5, 2026. ECF No. 60.

## DISCUSSION

As an initial matter, Plaintiff's counsel argues that a fee award would be inappropriate, because the deterrence purpose of Rule 11 was served merely by the Court's decision concluding that counsel violated Rule 11. See, e.g., ECF No. 59 at 7-8. This argument ignores that Judge Torres already determined that an award of fees was appropriate. She ordered the "imposition of sanctions in the form of reasonable costs and attorneys' fees against Crosland," including the "costs and attorneys' fees [Defendants] have incurred in opposing this action." ECF No. 43 at 12. As such, whether a non-monetary sanction or a nominal sanction in the amount of $2,000 to $5,000, as Plaintiff's counsel proposes (see ECF No. 59 at 16-17), is appropriate is not a question for this Court. The only issue to be decided is the amount of "reasonable costs and attorneys' fees" incurred by Defendants in "opposing this action." ECF No. 43 at 12.

Turning to the amount of fees sought, in determining whether an amount of claimed attorney's fees is appropriate, the "starting point" is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case," which calculates a "presumptively reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008)). For purposes of the lodestar, an attorney's hourly rate is considered

reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); see also Rosado v. City of New York, No. 11-CV-4285 (SAS), 2012 WL 955510, at *4 (S.D.N.Y. Mar. 15, 2012) ("The relevant community to which the court should look is the district in which the case was brought.") (citation omitted). In assessing whether an hourly rate is reasonable, the court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. As for the time expended, an attorney's stated number of hours should be reduced by the court where it is greater than required to litigate the case effectively, see Seitzman v. Sun Life Assurance Co. of Canada, 311 F.3d 477, 487 (2d Cir. 2002) (time component of lodestar calculation "reflects the hours worked . . . that are neither excessive nor duplicative"), or where the attorney's proffered time records are vague or otherwise inadequate to enable the court to determine the reasonableness of the work performed or the time expended. See Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic, No. 10-CV-5256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (vague and block-billed time records insufficient to substantiate claimed expenditures of time and collecting cases).

In determining whether a reasonable amount of time was expended on a case, a court may consider "the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability, and reputation; the customary fee charged by the Bar for similar services; and the amount involved," among other factors. Weiwei Gao v. Sidhu, No. 11-CV-2711 (WHP) (JCF), 2013 WL 2896995, at *5 (S.D.N.Y. May 7, 2013) (citation omitted). As the party seeking attorney's fees bears the burden of demonstrating that its claimed fees are reasonable, Thai-Lao Lignite (Thailand), 2012 WL 5816878, at *3 (citations

omitted), it must submit, in support of its request for fees, contemporaneous time records that "specify, for each [timekeeper], the date, the hours expended, and the nature of the work done." Id. (citation omitted).

In support of their application, counsel submitted contemporaneous billing records showing the nature of the work performed (ECF No. 53-1), and provided biographies for the two attorneys that were staffed on the matter (ECF Nos. 53-2, 53-3). In total, Defendant seeks compensation for 137.1 hours of work. ECF No. 53 at 1. Two attorneys from Wang Hecker LLP worked on this matter: Mariann Wang and Heather Gregorio. ECF No. 53 at 1. Those attorneys are responsible for 134.9 hours of work. Id. In addition, one paralegal worked on the matter for a total of 2.2 hours. Id.

Mariann Wang is a partner at Wang Hecker who graduated from Columbia Law School in 1996 and has "routinely" represented clients in various civil rights cases. ECF No. 53-2 at 2-3. Ms. Wang bills at an hourly rate of $950. ECF No. 53 at 1. "[T]he customary rate for experienced litigators ranges from about $400 to $600 per hour in civil rights actions." Santander Consumer USA, Inc. v. City of Yonkers, No. 22-CV-8870 (KMK), 2025 WL 2673773, at *4 (S.D.N.Y. Sept. 18, 2025) (internal quotation marks and citation omitted). The issues in this case were not complex: counsel's memorandum of law in support of the motion to dismiss was 13-pages (ECF No. 24), and, as Judge Torres noted, several of Plaintiff's claims were "patently frivolous" and it would have been "obvious to any attorney who had familiarized himself with the law that the claims had absolutely no chance of success." ECF No. 43 at 11-12 (internal quotation marks and citation omitted). The memorandum of law in support of counsel's request for sanctions was also short, 17-pages, and did not raise any complex or novel issues. See ECF No. 26. Additionally, the parties did not progress in discovery beyond the filing of a proposed

case management plan. See ECF No. 40; see also ECF No. 49 (adjourning case management conference sine die).

Because this case did not raise any novel disputes, the matter was resolved on a motion to dismiss, and the parties did not engage in discovery, an hourly rate of $950 for Ms. Wang is not warranted. See, e.g., Mason v. Ethical Culture Fieldston Sch., No. 23-CV-1402 (JPO) (SLC), 2025 WL 2336096, at *9 (S.D.N.Y. Jan. 24, 2025), adopted by, 2025 WL 1862829 (S.D.N.Y. July 7, 2025) (reducing rate of partner who had been practicing for over 30 years from $1,250 per hour to $650 in civil rights action that settled before significant discovery); Vuppala v. 7 Mon LLC, No. 22-CV-9044 (JGLC) (KHP), 2026 WL 1309261, at *8 (S.D.N.Y. Mar. 13, 2026), adopted by, 2026 WL 1300130 (S.D.N.Y. May 12, 2026) (reducing hourly rate of partner with 24 years of experience in routine civil rights case from $650 to $575). Instead, given the rates approved by other courts in this District in routine civil rights cases, an hourly rate of $700 is appropriate for Ms. Wang. See, e.g., Stanbro Palou Stanbro v. Westchester Cnty. Health Care Corp., No. 19-CV-10857 (KMK), 2024 WL 1214560, at *4 (S.D.N.Y. Mar. 21, 2024) (finding $700 rate reasonable for partners in "not the most complicated or exceptional civil rights case"); Kulick v. Gordon Property Group, LLC et al., No. 23-CV-9928 (KPF), 2026 WL 2453598, at *31 (S.D.N.Y. Aug. 21, 2026) (approving rate of $715 for partner with 20 years of experience in civil rights action); Magalios v. Peralta, No. 19-CV-6188 (CS), 2024 WL 1856303, at *4-5 (S.D.N.Y. Apr. 26, 2024) (reducing rate from $800 to $650 for partners in civil rights action where "neither the facts nor law were particularly complicated").[2]

[2] Defense counsel points to cases where courts have awarded higher hourly rates in civil rights cases (ECF No. 53 at 2), but those cases involved years-long litigation and more complicated legal and factual issues. See Rosario v. City of New York, No. 18-CV-4023 (LGS), 2023 WL 2523624, at *2 (S.D.N.Y. Mar. 15, 2023) (approving rates of up to $900 for partners in civil rights litigation and noting they were "at the high end of the market for civil rights

Heather Gregorio is also a partner at Wang Hecker. ECF No. 53 at 1. She graduated from the New York University School of Law in 2015 and has handled "a wide range of civil rights and employment matters." ECF No. 53-3 at 2-3. Ms. Gregorio bills at an hourly rate of $600. ECF No. 53 at 1. For the same reasons discussed regarding Ms. Wang, such an hourly rate is not warranted here. See, e.g., Mason, 2025 WL 2336096, at *10 (reducing rate of partner with over 20 years of experience from $1,000 to $500 in civil rights action that settled); Stewart v. Davis, No. 22-CV-3583 (JSR), 2025 WL 2306838, at *4 (S.D.N.Y. Aug. 8, 2025) (reducing rate of partner from $675 to $450 in "very simple" civil rights action). Instead, an hourly rate of $500 is appropriate for Ms. Gregorio. See Penz v. Washer, No. 18-CV-4964 (VB), 2024 WL 3594572, at *5-6 (S.D.N.Y. July 30, 2024) (approving partner's rate of $500 where "the case did not raise any novel issues" but involved expansive discovery); Lilly v. City of New York, 934 F.3d 222, 231 (2d Cir. 2019) (affirming district court's reduction of partner's rate from $600 to $450 in a "simple, garden variety civil rights case").

One paralegal, Isabelle Bohn, also performed work on this case, at an hourly rate of $200. ECF No. 53 at 1. Counsel provides no biographical information for Ms. Bohn regarding her experience as a paralegal. Regardless, in this District, a typical hourly rate for paralegal work is $100. See Garzon v. Bldg. Servs. Inc., No. 24-CV-5429 (JLR) (RFT), 2025 WL 1871171, at *19

---

litigation" but were warranted because the case "was particularly challenging to litigate" due to "tenacious opposition" and which required counsel to "relitigate a decades-old murder trial while fitting [p]laintiff's claims into the complex and evolving legal doctrine governing this area of civil rights litigation"); Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York, No. 96-CV-8414 (JSS), 2024 WL 2951329, at *6 (S.D.N.Y. May 23, 2024), adopted by, 2024 WL 2944285 (S.D.N.Y. June 10, 2024) (approving rate of $800 for partners at large law firm in civil rights action that had spanned over 25 years); Rosenfeld v. Lenich, No. 18-CV-6720 (NGG) (PK), 2022 WL 2093028, at *3-4 (E.D.N.Y. Jan. 19, 2022) (noting with approval rates of up to $900 for partners in determining whether counsel's contingency award for a $3.2 million settlement fund in class action was appropriate where counsel engaged in "hard-fought" settlement negotiations and litigated "novel legal issues").

(S.D.N.Y. July 2, 2025), adopted by, 2025 WL 2062741 (S.D.N.Y. July 23, 2025) (recommending rate of $100 for paralegal where party did not provide any biographical information); Varghese v. Plecosystems, Inc., No. 23-CV-03830 (MKV) (SN), 2026 WL 475949, at *2 (S.D.N.Y. Jan. 22, 2026), adopted by, 2026 WL 475008 (S.D.N.Y. Feb. 19, 2026) ("Hourly rates for paralegals of $100 to $150 per hour are typical for awards in this District.") (citation omitted); see also Esquivel v. Lima Rest. Corp., No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *18 (E.D.N.Y. Sept. 29, 2023) (recommending rate of $100 where plaintiff's "motion papers do not state any facts regarding the identify or qualifications of the paralegal that performed work in this case").

Turning to the reasonableness of the hours requested by Wang Hecker LLP, counsel billed a total of 137.1 hours, consisting of 32 hours by Ms. Wang, 102.9 hours by Ms. Gregorio, and 2.2 hours by Ms. Bohn. ECF No. 53 at 1. A review of the invoices filed by Wang Hecker LLP reveal that counsel requests fees for work done by partners that should have been completed by a junior attorney or paralegal. For example, both partners billed for tasks such as preparing notices of appearances; initial disclosures; or change of address forms; filing documents on the docket; conducting legal research; cite-checking; and proof-reading—all tasks that should have been delegated to more junior attorneys or paralegals. See, e.g., ECF No. 53-1 at 2 (entries dated November 9, 2024 and November 10, 2024 from Ms. Gregorio billing 1.5 hours total to legal research); id. (entry dated November 12, 2024 from Ms. Gregorio billing 1.2 hours to legal research); id. at 3 (entry dated November 14, 2024 from Ms. Wang billing 0.4 hour to notice of appearances and filing of letter); id. (entry dated November 14, 2024 from Ms. Gregorio billing 0.5 hours to preparing notices of appearance and filing with the court); id. (entry dated December 11, 2024 from Ms. Gregorio billing 0.4 hours to "[f]inalizing and filing letter to Judge Torres");

id. at 4 (entry dated January 7, 2025 from Ms. Gregorio billing 0.2 hour to "[c]alendaring and discussing briefing schedules"); id. (entry dated January 8, 2025 from Ms. Gregorio billing 1 hour to legal research); id. (entry dated January 13, 2025 from Ms. Gregorio billing 0.6 hours to "proofing sanctions motion," 1.2 hours to "cite checking motion to dismiss," 0.5 hours to "proofing motion to dismiss," and 0.2 hours to filing sanctions motion and motion to dismiss); id. at 5 (entry dated February 21, 2025 from Ms. Gregorio billing 1.7 hours to cite checking the motion to dismiss reply brief, 2 hours to cite checking the sanctions reply brief, and 1.4 hours to proofing both replies); id. (entry dated March 23, 2025 from Ms. Gregorio billing 0.4 hours to "work[ ] on initial disclosures"); id. (entry dated March 25, 2025 from Ms. Gregorio billing 0.4 hours to "[r]evising initial disclosures and related correspondence with M. Wang"); id. (entry dated May 30, 2025 from Ms. Gregorio billing 0.2 hours to "preparing and filing change of address forms"); id. at 6 (entry dated June 19, 2025 from Ms. Gregorio billing 0.2 hours to "[p]reparing clean copy and running by AMG" and 0.7 hours to "cite checking opposition brief"); id. (entry dated June 20, 2025 from Ms. Gregorio billing 1.3 hours to "[s]econd half of cite check of reconsideration opposition").

To address these instances of overbilling, a 15% reduction in the total hours requested is warranted. See DoubleLine Cap. LP v. Odebrecht Fin., Ltd., No. 17-CV-4576 (GHW) (BCM), 2023 WL 2870484, at *5 (S.D.N.Y. Apr. 10, 2023) (reducing hours by 25% for attorney work that would have been "most efficiently performed by more junior lawyers at lower rates") (internal quotation marks omitted); Cox v. 257 Bleecker LLC, No. 23-CV-1259 (MMG) (SLC), 2026 WL 884737, at *3-4 (S.D.N.Y. Mar. 13, 2026), adopted sub nom. Cox v. The Green Room WV, LLC, 2026 WL 881272 (S.D.N.Y. Mar. 31, 2026) (recommending reduction of 20% due in part to partner billing for administrative tasks such as filing and mailing documents); Zero

Carbon Holdings, LLC v. Aspiration Partners, Inc., No. 23-CV-5262 (LJL), 2024 WL 3409278, at *10 (S.D.N.Y. July 15, 2024) (reducing hours by 10% where "there were tasks conducted by partners that could have been conducted by counsel or associates," such as revising standard forms of services and filing documents with the court); King Fook Jewellry Grp. Ltd. v. Jacob & Co. Watches, Inc., No. 14-CV-742 (ER) (JLC), 2019 WL 2535928, at *7 (S.D.N.Y. June 20, 2019), adopted sub nom. by, King Fook Jewellry Grp. Ltd. v. Jacob & Co. Watches Inc., 2019 WL 4879212 (S.D.N.Y. Oct. 3, 2019) (reducing hours by 15% where partner billed for tasks that "could have been performed by a junior associate" such as drafting initial disclosures and preparing letters to the court); Rosso v. Pi Mgmt. Assocs., No. 02-CV-1702 (KNF), 2006 WL 1227671, at *4 (S.D.N.Y. May 3, 2006) (reducing hours by 15% where "some of the work done by a senior attorney at the law firm could have been performed by a junior attorney"); China AI Cap. Ltd. v. DLA Piper LLP (US), No. 21-CV-10911 (VM) (VF), 2025 WL 2466633, at *10 (S.D.N.Y. May 22, 2025), adopted by, 2025 WL 3204368 (S.D.N.Y. Nov. 17, 2025) (reducing fees where a senior or mid-level associate performed work, such as cite-checking, that could have been delegated to a junior associate or paralegal); Daiwa Special Asset Corp. v. Desnick, No. 00-CV-3856 (SHS), 2002 WL 31767817, at *4 (S.D.N.Y. Dec. 3, 2002) (reducing hours billed by associate for "paralegal and clerical tasks as proof-reading").

All of Plaintiff's arguments for a reduction in the fee award are meritless. First, Plaintiff's counsel argues that the Court must consider his ability to pay, including the fact that he has not been paid for his representation of Plaintiff. ECF No. 59 at 14-15. But although counsel claims that he is unable to pay, he has not provided any financial documentation to support that allegation, such as tax returns, financial statements showing his firm's yearly revenues, or even a sworn declaration establishing the facts necessary for the Court to assess his claimed inability to

pay. See, e.g., China AI Cap. Ltd., 2025 WL 2466633, at *12 n.9 (declining to reduce sanctions award based on claimed inability to pay that was unsubstantiated by party claiming need). Courts in this District have declined to reduce a sanction award based on an inability to pay where the entity has not provided adequate documentation to support the claimed financial duress.[3] See Midamines SPRL Ltd. v. KBC Bank NV, No. 12-CV-8089 (RJS), 2016 WL 11359166, at *2 (S.D.N.Y. Mar. 31, 2016) (declining to reduce fee award based on the plaintiff's inability to pay where plaintiff "never provided a financial declaration or any other documents reflecting his asserted lack of income"); An v. Despins, No. 22-CV-10062 (VEC) (JW), 2024 WL 1157281, at *5 (S.D.N.Y. Mar. 18, 2024), appeal dismissed by, No. 24-914, 2024 WL 4524742 (2d Cir. Aug. 13, 2024) ("Because of the lack of financial documentation presented by Plaintiffs, combined with Plaintiffs' Counsels' repeated filing of baseless lawsuits, this Court declines to further consider Plaintiffs' claimed inability to pay this sanctions award."); see also Loftus v. S.E. Pennsylvania Transp. Auth., 8 F. Supp. 2d 464, 468-69 (E.D. Pa. 1998), aff'd by, 187 F.3d 626 (3d Cir. 1999) (concluding that counsel's "affidavit [was] completely devoid of detail concerning income and expenses" and court thus declined to consider inability to pay).

Moreover, counsel now contends that a monetary sanction is unnecessary because "the mere potential of a sanction has made counsel reconsider filing anything in federal court, for any reason, whatsoever." ECF No. 59 at 15. Yet, Plaintiff's counsel pressed forward with this case for months, despite multiple pre-motion letters warning that many of the claims in the complaint were frivolous and plainly legally deficient. Counsel was repeatedly warned of the potential for sanctions prior to the filing of the Rule 11 motion. See ECF Nos. 4, 14, 19. Counsel nevertheless

[3] Counsel also argues that the Court must consider the fact that he has not been paid by his client. ECF No. 59 at 15-16. But counsel cites to no case for support.

continued to press the frivolous claims. That conduct required Defendants to incur the expense of fully briefing a motion to dismiss and a motion for sanctions. Simply stated, counsel's own conduct in the face of clear warnings belie his present contention that the mere potential of a sanction is itself a deterrence. The record here demonstrates that it plainly is not.

Plaintiff's counsel also argues that fees incurred in preparing a fee application are "generally not compensable under Rule 11." ECF No. 59 at 12. To the contrary, "it would defeat the purpose of Rule 11 if a party successfully established a violation of the rule, but was not awarded the fees and costs it incurred in being forced to file such a motion." See, e.g., China AI Cap. Ltd., 2025 WL 2466633, at *12. And Plaintiff cites to no case to support his contention that Defendants are not entitled to recover the cost of preparing the fee application. Similarly unavailing is counsel's argument that fees are not recoverable for time spent on client communications, administrative tasks, settlement discussions, and discovery preparation. ECF No. 59 at 10-11. Here, too, counsel cites to no case law for support. Regardless, all of the work performed by defense counsel falls within the scope of Judge Torres' order that counsel is responsible for the "reasonable costs and attorney's fees incurred in [Defendants'] defense of this action," because the work performed was necessary to defend against Plaintiff's claims. ECF No. 43 at 13.

In the same vein, counsel argues that the hours requested are excessive, claiming that defense counsel overbilled for a "routine, pleadings-stage motion to dismiss" and sanctions motion. ECF No. 59 at 8-10. But this argument ignores that counsel's unreasonable behavior compounded the work that defense counsel was forced to perform. For example, counsel did not respond to many of defense counsel's communications, including Defendants' Rule 11 letter and draft motion. See ECF Nos. 14, 19, 21. Counsel ignored the deadline to submit a joint discovery

plan, requiring Defendant's to unilaterally prepare a plan and submit two more letters. ECF Nos. 33, 39. And with the reduction in the hours requested, as explained supra pp. 7-9, the hours expended for the work performed are reasonable.

In sum, the following award of attorney's fees is appropriate.

| ATTORNEY'S FEES | | | | | |
|---|---|---|---|---|---|
| **Timekeeper** | **Hourly Rate** | **Requested Hours** | **Reduced Hourly Rate** | **Hours after 15% reduction** | **Total** |
| Mariann Wang | $950 | 32 | $700 | 27.2 | $19,040.00 |
| Heather Gregorio | $600 | 102.9 | $500 | 87.465 | $43,732.50 |
| Isabelle Bohn | $200 | 2.2 | $100 | 1.87 | $187.00 |
| **TOTAL** | | | | | $62,959.50 |

## CONCLUSION

For the foregoing reasons, Defendants' application for attorney's fees is granted in the amount of $62,959.50.

The Clerk of Court is respectfully directed to close the motion at ECF No. 53.

**SO ORDERED.**

DATED: New York, New York
September 21, 2026

VALERIE FIGUEREDO
United States Magistrate Judge